IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 20-417 |
| | : | |
| KELVIN JIMENEZ and DOMINIQUE PARKER | : : | |

# ORDER

AND NOW, this 19th day of February, 2025, upon consideration of the Defendant Hassan Elliott's Motion in Limine to Exclude Rap Music, Videos, and Associated Content (ECF No. 216)—joined by Kelvin Jimenez and Dominique Parker (ECF Nos. 250, 251)—the Government's response thereto, and the arguments made by the parties at the February 12, 2025 pre-trial conference, it is ORDERED the motion is DENIED.[1] As identified in its brief (ECF No. 249), the

---

[1] Defendants seek to exclude rap music, videos, and associated content, arguing the materials are irrelevant, more prejudicial than probative, and contain inadmissible hearsay. Following a thorough review of the materials—including a line-by-line analysis of "Frankford Purge" lyrics at the pre-trial conference—the Court finds the evidence admissible. The motion in limine is denied.

First, the excerpts from "Frankford Purge" are relevant. Defendants argue the video is not relevant because it describes generic acts of violence that have no tendency to make any fact more or less probable. ECF No. 216-1 at 1-4. However, in its response to the motion, the Government specifically ties the lyrics and symbolism in the video to the charged conduct. It highlights that the video would be used to prove "the defendants' knowledge of the enterprise; association with the enterprise; their agreement that they or other gang members would commit racketeering acts; their knowledge of and participation in certain racketeering offenses; the existence of the feuds between warring gangs; and to establish knowledge, motive, and intent." ECF No. 249 at 7.

For example, the Government explains that the excerpted lyrics in "Frankford Purge" refer multiple times to the murders of opposing gang members, identified by their nicknames. The lyrics reference the murder of Kaseem Rogers (i.e., "They know we smoked Glizzy [Rogers] in the name of King Lo [a murdered SG1700 member]," "Seemy [Rogers] got hit with that Ruger [the gun used to kill Rogers]") and the murder of Dontae Walker (i.e., "I won't go out like Tae," "I guess he thought he was a barber for cutting too many fades but killers walked down on him a bullet ripping through his fade"). *See id.* at 7-15. Parker is charged with Walker's murder and Jimenez is charged with Rogers' murder. *See* ECF No. 105. The imagery in the video further amplifies the lyrics, such as when Jimenez is seen sweeping the sidewalk at the site of Dontae Walker's murder, allegedly to reenact the murder, in which Walker, a barber, was killed while sweeping the hair next to his barber chair. ECF No. 249 at 15. The lyrics also refer to SG1700's reputation for violence

1

(i.e., "Everybody's catchin' bodies"), the gang's territorial dominance ("We run Frankford"), Parker's role as a leader ("Got my youngest on some shit . . . they spin your block"), and the gang's drug sales ("We was sellin' all the work [drugs]"), ECF No. 249 at 11-16, all of which map onto the charges in the indictment. *See* ECF No. 105. The Government has stated cooperating witnesses will contextualize the lyrics at trial, in addition to describing Defendants' involvement in the video's production and the way SG1700 used rap videos to advance its aims. *Id.* at 9, 26.

This specificity distinguishes "Frankford Purge" from irrelevant, generalized notions of violence, which the Court agrees would likely be inadmissible. Here, the video excerpts serve as direct evidence of the charges. *See United States v. Green*, 617 F.3d 233, 248 (3d Cir. 2010) ("evidence is intrinsic if it 'directly proves' the charged offense."); *see also United States v. Johnson*, No. 22-2845, 2024 WL 617719, at *4 (3d Cir. Feb. 14, 2024) ("If someone tells you 'I have guns and drugs,' and then you find guns and drugs in his house, his statement is direct proof that the guns and drugs are in fact his. That he says it in rhyme does not change that. How a jury chooses to weigh that evidence is another matter, but the evidence itself is, analytically, intrinsic.").

Second, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Under Federal Rule of Evidence 403, a court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Rutland*, 372 F.3d 543, 546 (3d Cir. 2004) (quoting Advisory Committee Note to Rule 403). The rule carries a "presumption of admissibility," *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002), and district courts are afforded broad discretion when conducting a Rule 403 analysis. *United States v. DeMuro*, 677 F.3d 550, 559 (3d Cir. 2012).

As previously discussed, the video has significant probative value in that it offers direct evidence of the charged offenses, including the murders of opposing gang members, the gang's reputation for violence, Parker and Jimenez's association with co-conspirators and SG1700 more broadly, and the gang's drug dealing activity. *See Johnson*, 2024 WL 617719, at *4 ("[E]xplicit rap videos are probative . . . when the defendant performs the song, describes events closely related to the crime charged, and the evidence is not cumulative.") (quoting *United States v. Sims*, 11 F.4th 315, 323 (5th Cir. 2021)). The Court is not persuaded the unfair prejudice is significant, let alone that it substantially outweighs the highly probative evidence, particularly because the Government has carefully narrowed its use of the video to a few select clips rather than showing the video in its entirety. For example, the Government has excluded parts of the video previously highlighted by the Defendants as potentially offensive such as those that reference promiscuity and profanity. *See* ECF No. 216-1 at 6. In their motion, Defendants raise valid concerns that the rap videos may associate Defendants with racial stereotypes and activate anti-Black prejudice. ECF No. 216-1 at 5. The Court is sensitive to these concerns, but finds that the risk of unfair prejudice in this instance does not substantially outweigh the probative value of the video. *See Cross*, 308 F.3d at 323 ("[W]hen evidence is highly probative, even a large risk of unfair prejudice may be tolerable").

And even if the evidence were not intrinsic, it is still admissible under Rule 404(b), which permits evidence if (1) it has a proper purpose, (2) it is relevant, (3) its probative value outweighs its potential for unfair prejudice, and (4) the court instructs the jury to consider the evidence only for its limited, admissible purposes. *United States v. Givan*, 320 F.3d 452, 460 (3d Cir. 2003). Here, the Government seeks to admit the evidence for several admissible, non-propensity purposes

Government is permitted to admit select lyrics and clips from "Frankford Purge." The evidence shall be admitted subject to limiting instructions explaining to the jury how to consider the evidence. Parties are to submit any proposed jury instructions by **Thursday, February 20, 2025.**

The Court has remaining questions as to (1) the admissibility of certain photographs identified in the Government's brief—Nos. 4-10, 15-20, 22-23, 28, 31-41, 47, 53-55—and (2) the soundless video of Hassan Elliott and Dominique Parker. *See* ECF No. 249 at 32-33, 37-65. The Court will reserve judgment as to the admissibility of these pieces of evidence, the admissibility of which will be discussed with the parties on February 24, 2025 before trial. The Court requests the Government produce the video to the Court for its review by **Thursday, February 20, 2025**.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

including to prove Defendants' association with the enterprise, their knowledge of and participation in certain racketeering offenses (i.e., murders, drug dealing), and the existence of feuds with other gangs. *See* ECF No. 249 at 18. And for the reasons previously discussed, the evidence is relevant and its high probative value outweighs the risk of unfair prejudice.

Lastly, the statements the Government seeks to introduce are not hearsay. Hearsay refers to an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801. However, an opposing party's statement, when made by that party and offered against them, is not hearsay. 801(d)(2)(A). Nor are statements offered against an opposing party and "made by the party's coconspirator during and in furtherance of the conspiracy." 801(d)(2)(E). Such a co-conspirator's statement is admissible where the Government shows, by a preponderance of the evidence, that "(1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy." *United States v. Turner*, 718 F.3d 226, 231 (3d Cir. 2013). For one, the statements of the parties themselves—such as Jimenez's sweeping and the lyrics rapped by Parker—are admissible against them under Rule 801(d)(2)(A). Moreover, the statements made by other individuals—the lyrics rapped by Hassan Elliott and M.S., the statements made by Jimenez and Parker offered against the other, hand signs and clothing worn by various individuals—are also admissible because the Government has sufficiently established that 801(d)(2)(E) applies, for many of the same reasons previously discussed. *See* ECF No. 249 at 28-33.

Because the challenged evidence is relevant, not more prejudicial than probative, and not hearsay, the Court will deny the motion in limine.